**Ex parte Charles Anthony IVEY.**

**No. 63306.**

Court of Criminal Appeals of Texas,
Panel No. 3.

Feb. 13, 1980.

George R. Milner, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Ronald D. Hinds and Kelly Loving, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before PHILLIPS, TOM G. DAVIS and DALLY, JJ.

## OPINION

PHILLIPS, Judge.

Appellant seeks relief from an order of the 265th Judicial District Court of Dallas County setting bail at $250,000.

Billy Davis, an employee of the Security Transport Corporation, testified that on September 14, 1979, he was delivering money from an armored car to a store when he and the driver of the armored car were robbed by two men. Davis testified that from what he heard after the offense, the men took $631,000 from the armored car. Davis identified appellant as one of the robbers, and testified that appellant wielded a revolver during the offense.

Defense counsel established on cross-examination that Davis saw the two men for a short time before the men taped his eyes. Appellant wore dark sunglasses and a hard hat. Davis testified that at various dates prior to the hearing he viewed a total of four photographic displays. At the first two he failed to identify the robbers; he was able to pick out photographs of the robbers from the last two displays.

Dallas police officer H. O. Wilkerson testified over appellant's hearsay objection that he had received what he thought was reliable information that if appellant were released on bond Davis's life would be endangered. Wilkerson refused to disclose the informant's name on the ground that to do so would endanger the informant. Wilkerson also testified that the pickup truck used by the robbers to escape had been found after the offense. Two bags of money taken from the armored car were found in the truck. The police were unable to obtain any fingerprints from the truck. Wilkerson testified that he showed Davis

photographic displays on two occasions. According to Wilkerson appellant was born in Dallas County and had been "in and out" of the county all his life.

Appellant called Buzz Deitchman, a Dallas attorney, who testified that he knew appellant from representing him in former cases. According to Deitchman appellant was married and had children. The parents of both appellant and his wife were long-time Dallas residents. Appellant owned a home in Oak Cliff and prior to his arrest was moving into another home in Cedar Hill. Appellant had been employed by Manor Bakery in Dallas before he was injured on the job. Deitchman testified that appellant's wife had contacted him in regard to posting bond. After investigating appellant's assets and bond company policy Deitchman determined that appellant and his wife could post at most a $25,000 bond.

█ Article 17.15, V.A.C.C.P., provides: The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

The primary purpose of an appearance bond is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez*, 558 S.W.2d 477 (Tex.Cr.App.1977); *Ex parte Clark*, 537 S.W.2d 40 (Tex.Cr.App.1976). While bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail should not be used as an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116 (Tex.Cr.App.1977); *Ex parte Clark*, supra.

█ The nature of the offense and the circumstances of its commission should be considered, and this necessarily involves the punishment authorized by law. *Ex parte Clark*, supra; *Holliman v. State*, 485 S.W.2d 912 (Tex.Cr.App.1972). Here the offense charged was aggravated robbery, punishable by a term of imprisonment of up to 99 years or life. There was eyewitness testimony that appellant was one of the robbers. That testimony was based in part on several photographic displays. The State produced no evidence, other than Davis's hearsay testimony, as to the amount of money taken in the robbery. Two bags of money were recovered by police from the pickup used by the robbers in their escape, but there is no testimony as to how much money those bags contained. Wilkerson testified that he had received information from an unnamed informant that Davis's life would be endangered if appellant was released.

In support of its position that the bail set was reasonable the State argues that "an amount in excess of $600,000 was taken and could be used to secure the release of Appellant." This argument assumes, without the benefit of a conviction, that appellant (1) is guilty, (2) has access to the stolen money (if any is left unrecovered), and (3) would use the money to escape being tried. There is no evidence to support these assumptions, and we refuse to indulge in such speculation in determining whether the bail is set in a reasonable amount.

█ Another factor to be considered is appellant's ability or inability to make bail. *Ex parte Bufkin*, supra; *Ex parte McClellan*, 545 S.W.2d 483 (Tex.Cr.App.1977). It appears from Deitchman's testimony that appellant had been unemployed after suffering an accident at work prior to the offense. Deitchman also testified that he had been contacted by appellant's wife, and after investigating the matter, had determined that appellant and his wife could only post bond in the amount of $25,000.

It is undisputed that appellant has been a lifetime Dallas resident, and both his par-

ents and his wife's parents are from Dallas. Appellant has a family, and owns a house in the Dallas area.

Weighing the foregoing evidence, we conclude that the bail set is excessive. *Ex parte Clark,* supra. We reduce bail to $50,-000.

It is so ordered.