Opinion issued January 8, 2009
  








    







In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00331-CR




ROBERT NARVAEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1159355




MEMORANDUM OPINION
          Appellant, Robert Narvaez, was charged with capital murder. The trial court
initially denied bail. Appellant filed an application for writ of habeas corpus,
requesting that his bail be set at $30,000. After a hearing on the writ, the trial court
granted habeas corpus relief, but set appellant’s bail at $500,000. In this appeal,
appellant contends the amount of bail is statutorily and constitutionally excessive and
unreasonable and that it should instead be set at $100,000. We affirm.
Factual Background
          The indictment alleges that Narvaez killed 16-year-old Carlos Christopher
Zamudio by shooting him with a deadly weapon, namely a firearm, during the course
of a robbery. Zamudio died as a result of being shot in the neck. 
          No testimony was admitted during the hearing on appellant’s writ of habeas
corpus. At the hearing, the trial court took judicial notice of the information in the
court’s file of the underlying case, and at appellant’s request, took judicial notice of
the evidence admitted in the proof evident hearing conducted for his co-defendant,
Eric Munoz. 
          The evidence admitted at the co-defendant’s hearing demonstrated that Aizar
Trevino had been driving his brother’s blue Honda Accord, with his friend Zamudio
sitting in the passenger seat, when the two decided to stop at a Whataburger
restaurant. While eating, Trevino noticed a purple Escalade circle the restaurant. 
Shortly thereafter, a Hispanic female named Cynthia or Sandra approached their car.
She was crying and told Trevino and Zamudio that her boyfriend had kicked her out
of his car. She asked Trevino and Zamudio to take her to a nearby apartment to visit
a friend, which they agreed to do. As he turned into the apartment complex, Trevino
again noticed the purple Escalade, which was leaving the gated complex. Two men
got out of the Escalade, pointed guns at Trevino and Zamudio and ordered them out
of the Honda. Trevino got out of the car and ran; when he turned around, he saw
Zamudio on the ground and he then heard six shots being fired in Zamudio’s
direction. One of the men then ordered the girl into Trevino’s car, which then sped
away. Trevino did not see the purple Escalade again, but he believed that the event
was a “set up” that began at the Whataburger restaurant. The police found the stolen
Honda the next day; it had been stripped of its custom wheels and rims and burned. 
          The crime went unsolved for several years, until Sandra Gaitan was arrested
on unrelated charges. When Gaitan was interviewed, she at first claimed that she
herself was a victim of the crime, but later admitted to being a party to Zamudio’s
murder. Gaitan admitted that she lured Trevino and Zamudio to the apartment
complex so that appellant and Munoz could steal their car. Gaitan told police that she
saw Munoz shoot Zamudio, who was unarmed. 
          At the hearing, counsel for the State represented to the court that appellant was
a member of a criminal gang and that appellant had traveled to Mexico after the crime
in question. Appellant’s counsel informed the court that appellant’s mother was
present to testify on his behalf, but she was not called to do so. No evidence
regarding appellant’s financial or employment status, community ties or citizenship
status was admitted. 
Excessive Bail
          In his single point of error, appellant asserts that the bail in his capital murder
case is excessive and thus violates the federal and state Constitutions and the Texas
Code of Criminal Procedure. 
          The standard for reviewing bail settings is whether the trial court abused its
discretion. See Ex parte Rubac, 611 S.W.2d 848, 849, 850 (Tex. Crim. App. 1981);
Cooley v. State, 232 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2007, no pet.); 
Ex parte Ruiz, 129 S.W.3d 751, 753 (Tex. App.—Houston [1st Dist.] 2004, no pet.). 
In the exercise of its discretion, a trial court should consider the following factors in
setting a defendant’s bail:
1. The bail shall be sufficiently high to give reasonable assurance that
the undertaking will be complied with. 
 
2. The power to require bail is not to be so used as to make it an
instrument of oppression. 
 
3. The nature of the offense and the circumstances under which it was
committed are to be considered. 
 
4. The ability to make bail is to be regarded, and proof may be taken
upon this point. 
 
5. The future safety of a victim of the alleged offense and the community
shall be considered. 
Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); see Ludwig v. State, 812
S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that court is “to be governed in the
exercise of [its] discretion by the Constitution and by the [article 17.15 factors]”);
Cooley, 232 S.W.3d at 234. The burden of proof is upon a defendant who claims bail
is excessive. Rubac, 611 S.W.2d at 849; Cooley, 232 S.W.3d at 234. In reviewing
a trial court’s ruling for an abuse of discretion, an appellate court will not intercede
as long as the trial court’s ruling is at least within the zone of reasonable
disagreement. Cooley, 232 S.W.3d at 234. But an abuse of discretion review requires
more of the appellate court than simply deciding that the trial court did not rule
arbitrarily or capriciously. Id. The appellate court must instead measure the trial
court’s ruling against the relevant criteria by which the ruling was made. Id.
          The primary purpose for setting bail is to secure the presence of the defendant
in court at his trial. Cooley, 232 S.W.3d at 234 (citing Ex parte Vasquez, 558 S.W.2d
477, 479 (Tex. Crim. App. 1977)). The amount of bail should be set sufficiently high
to give reasonable assurance that the accused will comply with the undertaking, but
should not be set so high as to be an instrument of oppression. Id. (citing Ex parte
Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977)); Ex parte Willman, 695
S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.] 1985, no pet.). When considering
the nature of the offense, it is proper to consider the possible punishment. Vasquez,
558 S.W.2d at 479–80. Further, the ability or inability of an accused to make bail,
even in a case of alleged indigence, does not alone control in determining the amount
of bail. Ex parte Charlesworth, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); Ex
parte Branch, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); Ex parte Hulin, 31
S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.). If the ability to
make bond in a specified amount controlled, the role of the trial court in setting bond
would be completely eliminated and the accused would be in the position to
determine what his bond should be. Ex parte Miller, 631 S.W.2d 825, 827 (Tex.
App.—Fort Worth 1982, pet. ref’d). Finally, courts should also consider the
defendant’s work record, family ties, residency, criminal record, conformity with
previous bond conditions, and aggravating factors involved in the offense. Id. (citing
Rubac, 611 S.W.2d at 849). 
          Appellant argues that his bail is excessive in light of his contentions that the
evidence against him was merely hearsay and not “substantial,” and the evidence
established he was not the person who actually shot Zamudio. In addition, appellant
argues the bail is excessive because he has no criminal record, and because, although
he had traveled to Mexico shortly after the shooting, he had since returned to the
Houston area for a number of years. 
          As to appellant’s arguments regarding the evidence against him, we construe
this as an argument that the nature and circumstances of his alleged offense did not
warrant a bail of $500,000. Appellant points us to Ludwig v. State, a capital murder
in which the bond was reduced from $1,000,000 to $50,000 where circumstances of
the offense were not developed at the habeas hearing.   812 S.W.2d 323, 325 (Tex.
Crim. App. 1991). Ludwig, however, does not require a reduction in appellant’s bail
because the circumstances of appellant’s alleged offense in this case are well-developed. In the instant case, appellant is an alleged party to the robbery and murder
in which the 16-year-old Zamundio was shot and killed merely to steal the rims from
the car in which he was a passenger. The circumstances of the offense as set forth in
the indictment and Gaitan’s statements, and reflected in the appellate record, depict
a violent, unprovoked robbery and killing of a 16-year-old. If convicted, appellant
faces life imprisonment or the death penalty. See Tex. Penal Code Ann. § 12.31
(Vernon Supp. 2008).
          As to the next factor we must consider under article 17.15—appellant’s ability
to make bail— neither appellant nor the State submitted evidence submitted regarding
his financial status. Without information regarding his financial resources, we cannot
say that this factor favors a reduction in appellant’s bond. Cooley, 232 S.W.3d at
236; Ex parte Chavfull, 945 S.W.2d 183, 187 (Tex. App.—San Antonio 1997, no
pet.) (where no evidence was submitted regarding defendant’s financial resources,
trial court’s refusal to lower bail of $750,000 was affirmed).
          Appellant also contends that his bail is excessive because he has no criminal
record, and because, although he had traveled to Mexico shortly after the shooting,
he had since returned to the Houston area for a number of years. We construe the first
part of that argument as a contention that appellant is not a danger to the community,
and that he has no history of failing to appear on previous bonds. While a lack of a
history of failing to appear on other bonds might weigh in his favor, in light of
appellant’s alleged membership in a street gang, his association with his co-defendant, also an alleged gang member, and the violent nature of the crime at issue,
we cannot say that the bail in this case is excessive. See, e.g., Ex parte Simpson, 77
S.W.3d 894, 897 (Tex. App.—Tyler 2002, no pet.) ($600,000 bail held not excessive
where capital defendant was a member of a street gang and had committed a “violent,
unprovoked killing,” suggesting “an appalling lack of concern for human life”).
          Finally, as to appellant’s remaining argument that, although he had traveled to
Mexico shortly after the shooting, he had since returned to the Houston area for a
number of years, we note that there is no evidence that appellant is married or has
children, or any family whatsoever, who reside in Texas. Similarly, there is no
evidence that appellant owns any property in this state or that he is employed in the
State. As a result, there is no evidence that appellant had any close ties to the
community that might assure his appearance at trial. In addition, there is no evidence
to alleviate the possibility that appellant might repeat his previous trip to Mexico. 
          Finally, a review of other reported cases reveals that a bail of $500,000 for a
capital murder defendant is not so exceptional as to be unwarranted. See, e.g., Ex
parte Jackson, 257 S.W.3d 520, 523 (Tex. App.—Texarkana 2008, no pet.) (refusing
to reduce $750,000 bail for defendant charged with capital murder after defendant left
the state); Ex parte Beard, 92 S.W.3d 566, 574 (Tex. App.—Austin 2002, pet. ref’d)
($8,000,000 bail reduced to $500,000 where capital murder defendant solicited death
of her wealthy husband); Ex parte Henson, 131 S.W.3d 645, 650 (Tex.
App.—Texarkana 2004, no pet.) (three counts of capital murder in violent
unprovoked robbery, bail reduced from $750,000 to $500,000 for each count in light
of evidence that defendant was not the shooter and had strong community ties); Ex
parte Simpson, 77 S.W.3d 894, 896–97 (Tex. App.—Tyler 2002, no pet.) ($600,000
bail, reduced from $1,000,000 by trial court, held not excessive where defendant was
a member of a street gang and had engaged in conduct court found “incredibly
shocking”); Ex parte Brown, 959 S.W.2d 369, 373 (Tex. App.—Fort Worth 1998, no
pet.) (determining that appellant did not have close ties to the community that might
assure his presence at trial and affirming denial of reduction of $500,000 pretrial
bond in capital murder case).
          As noted above, appellant faces the death penalty or life in prison if convicted. 
Under the circumstances of this case, keeping in mind that the primary purpose of an
appearance bond is to assure the accused’s presence at trial, we hold that the trial
court did not abuse its discretion in setting bail at $500,000 for this capital murder
case. Although the bail amount in this case is substantial, under the facts presented,
appellant has failed to demonstrate that the bail set is excessive. Appellant’s point
of error is overruled and the order denying habeas corpus relief is affirmed.
Conclusion
          We affirm the order of the trial court.
 
                                                             George C. Hanks, Jr.
                                                             Justice


Panel consists of Justices Jennings, Hanks, and Bland

Do not publish. Tex. R. App. P. 47.2(b).